J-S04017-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GORDON OTT | : | |
| | : | |
| Appellant | : | No. 1991 EDA 2025 |

Appeal from the Judgment of Sentence Entered June 27, 2025
In the Court of Common Pleas of Montgomery County
Criminal Division at No: CP-46-CR-0003855-2024

BEFORE: LAZARUS, P.J., STABILE, J., and NEUMAN, J.

MEMORANDUM BY STABILE, J.: **FILED JUNE 30, 2026**

Appellant, Gordon Ott ("Gordon"), appeals from the June 27, 2025, judgment of sentence imposing six to 23 months of incarceration followed by seven years of probation for his conviction as a conspirator[1] to the strangulation[2] of his stepdaughters, Ki.M. and Ky.M. (the "Children"). We affirm.

Gordon is married to Aubrey Ott ("Aubrey" and, collectively with Gordon, the "Otts"), his codefendant in this matter.[3] The Children are Aubrey's

_____

[1] 18 Pa.C.S.A. § 903(a)(1).

[2] 18 Pa.C.S.A. § 2718(a)(2). Appellant was also convicted as a conspirator to endangering the welfare of children ("EWOC") (18 Pa.C.S.A. § 4304(a)(1)) and simple assault (18 Pa.C.S.A.§ 27012(a)(3)).

[3] Aubrey's appeal is pending at 1993 EDA 2025.

daughters with her former husband. The Otts had custody of them on the weekend of April 27 and April 28, 2024. On the afternoon of Sunday, April 28, 2024, the Otts confronted the Children about agitating the Ott's dog, causing it to bark and whine. The Children denied it. N.T. Trial, 4/9/25, at 21-23, 67-68. The Otts accused the Children of lying. *Id.* at 23.

Ky.M., who was nine years old at the time of the incident, recalled that shortly before Ki.M. "got in trouble," Ky.M. was in the living room with the Otts. *Id.* at 59, 62-63. Ky.M. heard Gordon say, "this is what we did in the war." *Id.* at 62. Then she heard Aubrey say, "okay, I'll do it." *Id.* at 63. Aubrey then took a towel and a Wonder Woman cup and took Ki.M. into the bathroom. *Id.* at 63-64. Ky.M. remembered Aubrey and Ki.M. being in the bathroom for five minutes. *Id.* at 64.

Ki.M. testified that, when she went into the bathroom with Aubrey, she saw a red water bottle with a superhero symbol on it and a rag on the sink. *Id.* at 25-26, 37-39. Aubrey filled the water bottle and made Ki.M. face away from the sink and then lean backward with the back of her head over the sink. *Id.* at 26-27, 37-39. Aubrey then put the rag over Ki.M.'s face, pinched her nose, and poured water over her face. *Id.* at 27, 37-39. Ki.M. was unable to breathe during this procedure because Aubrey was holding her nose and because water entered her mouth when she opened her mouth. *Id.* at 56. Ki.M. was scared and so she leaned up, at which point Aubrey stopped what

she was doing. *Id.* at 28. Later that evening, the Otts told Ki.M. to forget about what happened. *Id.* at 29.

Aubrey testified that Ki.M. had marker all over her face and Aubrey was washing it off. *Id.* at 99-100. She covered Ki.M.'s eyes, nose, and mouth to keep soap out. *Id.* at 100. Aubrey testified that Ki.M. could breathe during this process and that she never pinched Ki.M.'s nose. *Id.* at 101. Aubrey also testified that the ongoing custody proceedings between she and the Children's father had been contentious. *Id.*at 109.

The next morning, Aubrey once again told Ki.M. not to tell anyone. *Id.* When the Children got back to their father and stepmother's house that afternoon after school, Ki.M. told her stepmother about the incident. *Id.* The Children's father arrived home during the conversation and recognized what was done to Ki.M. as waterboarding. *Id.* at 78. Ki.M.'s father and stepmother reported the incident to police. *Id.* at 80.

Charges were filed; the matter proceeded to an April 9, 2025, bench trial, and the trial court found Gordon guilty of the aforementioned offenses.[4] Following the imposition of sentence, Gordon filed this timely appeal. The sole question presented is the sufficiency of the evidence in support of the

---

[4] After the Commonwealth rested, the trial court granted Gordon's motion for judgment of acquittal as to felony EWOC, and ruled that Gordon could be guilty only of conspiracy to commit first-degree misdemeanor EWOC. N.T. Trial, 4/9/25, at 90.

conspiracy charge against Gordon. He claims there is no evidence that he conspired with Aubrey to commit any offense. Gordon's Brief at 3.

The following standard governs our review:

> When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. In addition, this Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed. Lastly, we note that the finder of fact is free to believe some, all, or none of the evidence presented.

*Commonwealth v. Smith*, 146 A.3d 257, 261-262 (Pa. Super. 2016) (internal citations and quotation marks omitted).

The Pennsylvania Crimes Code defines conspiracy as follows:

> **(a) Definition of conspiracy.** — A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
>> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>>
>> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a). Thus, criminal conspiracy requires "1) an agreement, 2) shared criminal intent, and 3) an overt act." *Commonwealth v. Johnson*,

- 4 -

180 A.3d 474, 479 (Pa. Super. 2018), *appeal denied*, 205 A.3d 315 (Pa. 2018).

> At the heart of every conspiracy lies the common understanding or agreement between the actors. Implicit in any conspiracy is proof … that an accused agrees to participate in the alleged criminal activity. The criminal union being prosecuted cannot be based upon an agreement to complete a broad, undefined objective at some unknown point. Rather, the agreement must rest upon the mutual specific intent to carry out a particular criminal objective. The *sine qua non* of a conspiracy is the shared criminal intent. Without this common purpose, a conspiracy cannot be maintained.

> Proving the existence of such an agreement is not always easy, and is rarely proven with direct evidence. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Indeed, [a] conspiracy may be proven inferentially by showing the relation, conduct, or circumstances of the parties, and the overt acts of alleged co-conspirators are competent as proof that a criminal confederation has in fact been formed.

*Commonwealth v. Chambers*, 188 A.3d 400, 410 (Pa. 2018) (internal citations and quotation marks omitted). Preexisting relationships, such as that of a husband and wife do not, of themselves, establish a conspiracy. *Id.* at 410. The Commonwealth must establish the formation of an illicit agreement. *Id.*

Gordon argues that the only evidence of conspiracy came from Ky.M.'s account of conversation between Gordon and Aubrey before Aubrey took Ki.M. into the bathroom. Gordon's Brief at 13. Gordon argues that this conversation did not evidence a conspiratorial agreement. As explained above, Ky.M. testified that she heard Gordon say, "this is what we did in the war," and then

Aubrey say, "OK, I'll do it," just before Aubrey took Ki.M. into the bathroom. According to Gordon, this exchange is not sufficient evidence of a conspiracy between the Otts. Gordon's Brief at 16-17. Gordon argues that he had no military experience, and that the conclusion that he conspired with Aubrey in the waterboarding of Ki.M. is mere speculation.

Gordon's brief to this court relies on the perceived vagueness of his statement about "what we did in the war," but he ignores the fact that Aubrey immediately responded that she would "do it." This exchange supports an inference that Aubrey agreed to do the thing Gordon spoke about. And the incident in question occurred directly after Aubrey said she would "do it." Gordon does not dispute that the actions Ki.M. described are known as waterboarding, nor does he dispute that waterboarding is known as a wartime torture technique. Moreover, Gordon's lack of military experience does not preclude his knowledge of waterboarding as a wartime torture technique. Drawing inferences in favor of the Commonwealth as verdict winner, as we must, these facts are sufficient to support a conclusion that the Otts formed an illicit agreement that Aubrey would waterboard Ki.M. Gordon's argument to the contrary requires us to draw inferences in his favor, in contradiction of the applicable standard of review. *See Smith*, 146 A.3d at 261-262.

For the foregoing reasons, we find Gordon's argument lacking in merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>6/30/2026</u>